IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL EVANS, | ) |
| Plaintiff, | ) |
| | ) Case No. 19 CV 4818 |
| v. | ) |
| | ) Judge Robert W. Gettleman |
| UNITED PARCEL SERVICE, INC., and | ) |
| TEAMSTERS LOCAL UNION NO. 705, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Michael Evans is an air driver for defendant United Parcel Service, Inc. ("UPS"). He is also a member of defendant Teamsters Local Union No. 705 ("the union"). Plaintiff alleges that UPS denied him overtime pay. He complained to UPS and the union; they allegedly retaliated. They also allegedly discriminated against plaintiff because he is African American. Plaintiff sued.

The union moves to dismiss. UPS answered the complaint but moves to dismiss in part. For the following reasons, the union's motion is denied and UPS's motion is granted in part. The court dismisses three claims against UPS: section 1981 retaliation (Count III), Title VII retaliation (Count IV), and fraudulent tax reporting under 26 U.S.C. § 7434 (Count V).

**1      Teamsters Local Union No. 705's motion to dismiss**

Plaintiff claims that the union: (1) discriminated against him based on his race, 42 U.S.C. § 1981; (2) retaliated against him when he complained about his pay, 42 U.S.C. § 1981; and (3) breached its duty to fairly represent him under the Labor Management Relations Act, 29 U.S.C. § 185(a). The union moves to dismiss, arguing that plaintiff's claims are untimely.

The union's motion is frivolous. The union argues that plaintiff failed to sue within 90 days of receiving a right-to-sue notice from the Equal Employment Opportunity Commission ("EEOC"). See 42 U.S.C. § 2000e–5(f)(1). That, even if true, is irrelevant: "[Section] 1981 does not require the filing of an EEOC charge before bringing an action in a federal court." Walker v. Abbott Labs., 340 F.3d 471, 474 (7th Cir. 2003). Nor do EEOC charges have anything to do with plaintiff's fair representation claim under the Labor Management Relations Act.

Nor would it have mattered even if plaintiff had brought his claims against the union under Title VII of the Civil Rights Act of 1964. Title VII, unlike section 1981, requires employees to file an EEOC charge before suing. 42 U.S.C. § 2000e–5(e)(1). If the EEOC declines to prosecute the case and gives a right-to-sue notice, the employee has 90 days to sue. 42 U.S.C. § 2000e–5(f)(1). Plaintiff alleges that the EEOC issued him a right-to-sue notice on April 19, 2019—less than 90 days before he sued the union on July 17, 2019.

The union relies on a right-to-sue notice dated December 2018, more than 90 days before plaintiff sued. In response, plaintiff relies on text messages supposedly showing that the union refused to represent him fairly. But because none of those documents were referred to in plaintiff's complaint, the court may not consider them. See Wright v. Associated Insurance Companies Inc., 29 F.3d 1244, 1248 (7th Cir. 1994).

Nor will the court consider the union's argument that plaintiff fails to state claims. That argument was raised for the first time in the union's reply. Such arguments are too late, for when a party moves to dismiss "on ground A, his opponent is not required to respond to ground B—a ground the movant might have presented but did not." Malhotra v. Cotter & Co., 885 F.2d 1305, 1310 (7th Cir. 1989). In any event, the union's argument is meritless. It relies on plaintiff's alleged failure to raise race discrimination in his EEOC charge. That, as discussed, has nothing to

do with his section 1981 claims. For these reasons, the court denies the union's motion to dismiss.

**2      United Parcel Service's motion to dismiss**

UPS moves to dismiss in part. For the following reasons, the court: (1) dismisses plaintiff's retaliation claims under section 1981 and Title VII; (2) dismisses plaintiff's fraudulent payment reporting claim under 26 U.S.C. § 7434; and (3) declines to dismiss plaintiff's retaliation claim under the Illinois Whistleblower Act, 740 ILCS 174.

**2.1      Plaintiff's retaliation claims under section 1981 and Title VII**

UPS argues that plaintiff fails to state retaliation claims. To avoid dismissal, a claim must be plausible. Plaintiff's retaliation claims are plausible if the court, taking the allegations as true, can reasonably infer that UPS is liable. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The standards for retaliation claims under section 1981 and Title VII are identical. Humphries v. CBOCS West, Inc., 474 F.3d 387, 403–04 (7th Cir. 2007). An employer may not retaliate against a plaintiff for engaging in a statutorily-protected activity—that is, for "reporting or otherwise opposing" conduct prohibited by the statutes. Gleason v. Mesirow Financial, Inc., 118 F.3d 1134, 1146 (7th Cir. 1997). Section 1981 and Title VII both prohibit employment discrimination based on race.

Plaintiff fails to state retaliation claims. The complaint lacks any allegation that plaintiff reported or otherwise opposed race discrimination. He alleges in his complaint only that: (1) he complained about being denied overtime pay; and (2) in retaliation, UPS reduced his hours, "effectively demot[ing] him to a part-time worker." Those allegations have nothing to do with reporting or opposing race discrimination. The court disregards as conclusory the allegation that, "At relevant times, UPS intentionally discriminated against [plaintiff] on the basis of his race by

treating similarly situated employees who are not African-American more favorably." That allegation is a "conclusory statement[ ] without reference to its factual context," which "the Federal Rules do not require courts to credit." Iqbal, 556 U.S. at 686 (disregarding a detainee's allegation that he was discriminated against "on account of [his] religion, race, and/or national origin and for no legitimate penological interest").

Nor did plaintiff allege race discrimination in his two EEOC charges against UPS. "Although filing an official complaint with an employer may constitute statutorily protected activity under Title VII, the complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class." Tomanovich v. Indianapolis, 457 F.3d 656, 663 (7th Cir. 2006). Plaintiff's EEOC charges against UPS—which he incorporated into his complaint—raised the same overtime pay and retaliation issues that he raised in his complaint. Neither of those charges raised race discrimination.

### 2.2 Plaintiff's fraudulent payment reporting claim under 26 U.S.C. § 7434

Next, UPS argues that plaintiff fails to state a claim for fraudulent payment reporting under 26 U.S.C. § 7434. Section 7434(a) forbids "any person" from "willfully fil[ing] a fraudulent information return <u>with respect to payments purported to be made</u> to any other person" (emphasis added). Violating section 7434 thus requires more than filing a fraudulent information return. The return must be fraudulent because it misrepresents the amount of payments actually made.

Plaintiff fails to state a fraudulent payment reporting claim. Plaintiff alleges not that UPS misrepresented the amount it paid him, but that that UPS ought to have paid him more. As Judge McDade explains, "a proper § 7434 violation must be predicated on a purported misstatement of amount." Derolf v. Risinger Bros. Transfer, 259 F. Supp. 3d 876, 885 (C.D. Ill. 2017). That

follows from the text: section 7434 forbids the filing of "a fraudulent information return <u>with respect to payments purported to be made to any other person</u>." 26 U.S.C. § 7434(a) (emphasis added). Thus, if an employer files a tax return that accurately reports the payments made to an employee, that return is not "fraudulent" under section 7434—even if the employer <u>ought</u> to have paid that employee more for whatever reason. Construing section 7434 to impose liability for filing tax returns that might be fraudulent in other ways—for example, by misclassifying an employee as an independent contractor—would make the modifying text superfluous: "with respect to payments purported to be made to any other person."

Whether that reading of section 7434 is right has yet to be decided by either the Seventh Circuit or by any other Court of Appeals. Nonetheless, the majority of the district courts to have interpreted section 7434 agree: a violation requires misrepresenting the amount of payments made. Those decisions are persuasive. The district courts that have taken the minority view limited their analyses to whether the tax return was "fraudulent" without discussing the modifying text: "with respect to payments purported to be made." <u>Compare</u> <u>Liverett v. Torres Advanced Enterprise Solutions LLC</u>, 192 F. Supp. 3d 648, 651–55 (E.D. Va. 2016) (concluding that based on its text, context, and congressional purpose, section 7434 "must be read to provide a private cause of action only where a defendant willfully files information returns that misrepresent the amount of payments made"), <u>Tran v. Tran</u>, 239 F. Supp. 3d 1296, 1297–98 (M.D. Fla. 2017) (agreeing with <u>Liverett</u> and concluding that filing "the wrong form establishes no liability under Section 7434 unless the form willfully misstates the payee's income"), <u>Derolf</u>, 259 F. Supp. 3d at 884–85 (C.D. Ill. 2017) (agreeing with <u>Liverett</u> and <u>Tran</u>), <u>Sims v. UNATION, LLC</u>, 292 F. Supp. 3d 1286, 1297–99 (M.D. Fla. 2018) (same), <u>and</u> <u>Guerra v. Teixeira</u>, No. CV TDC-16-0618, 2018 WL 3756716, at *8 (D. Md. Aug. 8, 2018) (agreeing with <u>Liverett</u>), <u>with</u>

5

Seijo v. Casa Salsa, Inc., No. 12-60892-CIV, 2013 WL 6184969, at *7 (S.D. Fla. Nov. 25, 2013) (holding that misclassifying employees as independent contractors violates section 7434 even when "[t]he amount of the payment [is] not in dispute"), and Leon v. Tapas & Tintos, Inc., 51 F. Supp. 3d 1290, 1297–98 (S.D. Fla. 2014) (same). See also Greenwald v. Regency Management Services, LLC, 372 F. Supp. 3d 266, 270–71 (D. Md. 2019) (distinguishing Liverett, Tran, and Guerra based on allegations that employee W-2s "did not include the 1099 payments" that their employer "made to them after their employment ended").

### 2.3 Plaintiff's Illinois Whistleblower Act claim

Finally, UPS argues that plaintiff's Illinois Whistleblower Act claim is preempted. The Whistleblower Act forbids employers from "retaliat[ing] against an employee for disclosing information to a government . . . agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(b). Plaintiff alleges that UPS retaliated against him for sharing such information with two government agencies: the National Labor Relations Board and the EEOC.

UPS argues that plaintiff's whistleblower claim is preempted by three statutes: the National Labor Relations Act, the Labor Management Relations Act, and the Illinois Human Rights Act. The court disagrees. Plaintiff's whistleblower claim is preempted so far as it relies on his having disclosed information to the National Labor Relations Board. But his claim is not preempted so far as it relies on having disclosed information to the EEOC.

**Disclosure of information to the National Labor Relations Board.** As plaintiff seems to concede, his whistleblower claim is preempted to the extent it relies on his having disclosed information to the National Labor Relations Board. Federal labor law preempts state-law claims when it "may fairly be assumed that the activities which a State purports to regulate … constitute

6

an unfair labor practice under § 8" of the National Labor Relations Act. San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236, 244 (1959). Section 8 makes it an unfair labor practice for an employer to "discriminate against an employee because he has filed charges or given testimony under this subchapter." 29 U.S.C. § 158(a)(4). Thus, so far as plaintiff alleges that UPS discriminated against him for disclosing information to the National Labor Relations Board, he alleges that UPS engaged in an unfair labor practice under section 8 of the National Labor Relations Act. Garmon preempts state-law claims based on such allegations.

**Disclosure of information to the EEOC.** Plaintiff also disclosed information to the EEOC. He filed two EEOC charges. In his second charge, plaintiff complained that: (1) he was denied overtime pay to which he was entitled under the collective bargaining agreement; (2) he previously filed an EEOC charge; and (3) UPS retaliated by reducing his work hours and giving more work hours to employees with less tenure. UPS argues that a whistleblower claim based on those allegations is preempted by section 301 of the Labor Management Relations Act and by the Illinois Human Rights Act.

Plaintiff's whistleblower claim is not preempted by the section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Section 301 preempts state-law claims that require a collective bargaining agreement's "interpretation." In re Bentz Metal Products Co., Inc., 253 F.3d 283, 289 (7th Cir. 2001) (en banc). Plaintiff's claim does not require interpreting the union's collective bargaining agreement. Suppose that plaintiff's interpretation were wrong and that the bargaining agreement, in fact, entitled him to no overtime pay. Under the Whistleblower Act, plaintiff was nonetheless entitled to file a charge with the EEOC free from retaliation—at least so long as he had "reasonable cause to believe" that his charge disclosed a legal violation. 740 ILCS

7

174/15(b). UPS argues that plaintiff lacked reasonable cause, but whatever the merits of that argument, UPS raised it only in its reply—too late for plaintiff to respond, and thus too late for this court to consider. Malhotra, 885 F.2d at 1310.

At most, plaintiff's whistleblower claim requires only a "reference" to the collective bargaining agreement. In re Bentz, 253 F.3d at 289. If so, preemption would not apply. Id. The agreement "may, of course, contain information such as rate of pay and other economic benefits that might be helpful in determining the damages" to which plaintiff is allegedly entitled. Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 413 n.12 (1988). "[F]ederal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby pre-empted." Id.

Nor is plaintiff's whistleblower claim preempted by the Illinois Human Rights Act. That statute has a limitation: "[N]o court . . . shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8-111(D). This limitation preempts claims "when the Act furnishe[s] the legal duty that the defendant was alleged to have breached." Maksimovic v. Tsogalis, 177 Ill. 2d 511, 517 (Ill. 1997). But claims are not preempted when their elements may be proven "without reference to legal duties created by the Act." Id. Contrary to UPS's argument, plaintiff need not assert "independent factual grounds to support [his] claim"—preemption turns not on "the factual overlap between the claims," but on "an examination of legal duties." Richards v. U.S. Steel, 869 F.3d 557, 564 (7th Cir. 2017) (quotation marks and alteration omitted).

Plaintiff's claim does not rest on UPS breaching any legal duty created by the Human Rights Act. It rests on UPS breaching the anti-retaliation provision of the Whistleblower Act after plaintiff filed an EEOC charge. As Judge Chang explains in Torres, plaintiff "argu[es] that

8

there was a breach of federal law reported to a federal agency, and that [UPS] later retaliated on that basis. That retaliation, in turn, violates the state Whistleblower Act. No mention of the Illinois Human Rights Act is needed at all, so there is no preemption." Torres v. Merck Sharp & Dohme Corp., 255 F. Supp. 3d 826, 833 (N.D. Ill. 2017). And Torres is not unique. See Washington v. Magna Exteriors, No. 18 C 50368, 2019 WL 4918146, at *6 (N.D. Ill. Oct. 4, 2019) (holding that the Human Rights Act did not preempt a retaliation claim brought under the Whistleblower Act); Carbajal v. City of Highland Park, No. 16 C 8364, 2017 WL 818858, at *4–5 (N.D. Ill. Mar. 2, 2017) (same); Thurman v. BMO Capital Markets Corp., No. 10 C 5727, 2011 WL 1004652, at *5 (N.D. Ill. Mar. 16, 2011) (same); Cochran v. BMA Management, Ltd., No. 08-CV-215-DRH-CJP, 2009 WL 1372987, at *5–6 (S.D. Ill. May 15, 2009) (same).

## CONCLUSION

Defendant Teamsters Local Union No. 705's motion to dismiss [Doc. 7] is denied. Defendant United Parcel Service, Inc.'s partial motion to dismiss [Doc. 14] is granted in part. The court dismisses the following claims against UPS: section 1981 retaliation (Count III), Title VII retaliation (Count IV), and fraudulent tax reporting under 26 U.S.C. § 7434 (Count V).

The union must answer the complaint on or before March 16, 2020. The parties are directed to file a joint status report using this court's form on or before March 23, 2020. This matter is set for a status hearing on April 7, 2020, at 9:00 a.m.

**ENTER:** **February 18, 2020**

**Robert W. Gettleman**
**United States District Judge**