**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL EVANS, | ) | Case No. 19-cv-4818 |
| | ) | |
| Plaintiff, | ) | Judge Robert W. Gettleman |
| | ) | |
| vs. | ) | Magistrate Judge Heather K. McShain |
| | ) | |
| UNITED PARCEL SERVICE, INC. and | ) | **DEFENDANT UNITED PARCEL** |
| TEAMSTERS LOCAL UNION NO. 705 | ) | **SERVICE, INC.'S REPLY IN** |
| | ) | **SUPPORT OF ITS MOTION FOR** |
| Defendants. | ) | **SUMMARY JUDGMENT** |
| | ) | |

**I.    Introduction**

In his Response to UPS's Motion for Summary Judgment (Pl.'s Resp.), Plaintiff fails not only to comply with the local rules, but to present any evidence to support a cognizable cause of action against UPS. Thus, UPS should be granted summary judgment on all claims.

**II.   Plaintiff's Allegations Must be Disregarded for Failing to Comply with L.R. 56.1.**

Plaintiff's failure to comply with Local Rule 56.1 is detrimental to his claim.[1] "The Court enforces Local Rule 56.1 strictly." *Canter v. At&T Umbrella Ben. Plan No. 3*, 2021 U.S. Dist. LEXIS 31503, at *2 n.2 (N.D. Ill. Feb. 19, 2021) (citing *McCurry v. Kenco Logistics Services, LLC*, 942 F.3d 783, 790 (7th Cir. 2019). "When a responding party's statement fails to dispute the facts

---

[1] In response to a motion for summary judgment, the opposing party must file a response to the LR 56.1(A)(2) Statement of Material Facts ("SOF") that complies with 56.1(e). L.R. 56.4(b)(2-3). A response to the Movant's SOF must clearly indicate if the fact is in dispute; if the fact is partially in dispute, the response must specify which part is admitted. LR 56.1(e)(2). "To dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3). "A response may not set forth any new facts, meaning facts that are not fairly responsive to the asserted fact to which the response is made." *Id.* If the opposing party wishes to assert facts not set forth in LR 56.1 SOF or the response, the party must submit a Statement of Additional Material Facts that complies with LR 56.1(d). LR 56.1(b)(2-3). The Statement of Additional Material Facts must consist of concise numbered paragraphs that are supported by a citation to the evidentiary material, including specific page numbers. LR 56(d)(1-2).

set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015) (internal quotation omitted). Moreover, when a party fails to cite to admissible evidence to refute the moving party's statement of material facts, the facts presented by the moving party are deemed admitted. *Curtis*, 807 F.3d at 218-19; *Canter*, 2021 U.S. Dist. LEXIS 31503, at *2 n.2.

Statements made in the opposing party's memorandum of law do not qualify as a Local Rule 56.1 response. *Patterson*, 2021 U.S. Dist. LEXIS 28041, at *1-5. The Court will also disregard Plaintiff's unsubstantiated arguments and characterizations that fail to cite to the record. *Williams v. Hartford Ins. Co. of the Midwest*, 2019 U.S. Dist. LEXIS 170938, at *2-3 (N.D. Ill. Oct. 2, 2019). Additionally, the Court does not consider facts that the opposing party failed to include in its own statement of material facts "because to do so would rob the other party of the opportunity to show that the fact is disputed." *Canter*, 2021 U.S. Dist. LEXIS 31503, at *2 n.2.

Many of Plaintiff's responses[2] to UPS's Statement of Material Facts were materially deficient because: (1) Plaintiff's responses did not respond to the factual allegation stated;[3] (2) Plaintiff's responses did not cite to evidence that actually supported his purported factual dispute;[4] (3) Plaintiff's response did not cite to any evidence;[5] and/or (4) Plaintiff's response directly contradicts his own deposition testimony or sworn statements.[6] Additionally, in contradiction with

---

[2] UPS is citing to the paragraph numbering in UPS's Statement of Material Facts. In Plaintiff's response, the numbering is inconsistent because he fails to number certain paragraphs, splits paragraphs, and skips certain paragraph numbers.
[3] SOF ¶¶4; 13; 26-27; 30-42; 47-54; 57-58; 61-64; 67-68; 70; 76-79; 83; 85-86; 88; 91; 99.
[4] SOF ¶¶4, 13; 26-27; 29; 30-31; 36; 38 42; 44; 49; 53; 57-58; 61; 63; 67; 85-86.
[5] SOF ¶¶8-13; 32-35; 37; 47, 53, 70, 83.
[6] *Compare* SOF ¶47, *with* Pl.'s Dep. 41:6-54:14, 339:22-342:16; *compare* SOF ¶¶36, 42, 57-58, 61, *with* Pl.s Dep. 38:5-9, 63:4-76:8, 88:5-92:13, 96:2-19, 116:3-11, 225:2-226:11, 231:8-233:3, 381:9-12; *compare* SOF ¶61, *with* Pl.s Dep. 88:15-89:8; *compare* SOF ¶67, *with* Pl.'s Dep. 55:3-23, 197:3-19; *compare* SOF ¶70, *with* Pl.'s Dep, 205:9-22, Communications, p. ME-001903-001905; *compare* SOF ¶99, Pl.'s Dep., 166:20-167:16, 408:17-409:18.

LR 56.1, Plaintiff attempted to submit new "facts" that were not responsive to the SOF in his response, instead of submitting a Statement of Additional Material Facts.[7] Further, Plaintiff did not cite to the Statement of Facts or submit a Statement of Additional Facts in his brief as required by the rule. *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.") As a result, UPS's Statements of Material Fact must be deemed admitted, and Plaintiff's alleged "facts" must be disregarded as unsupported by the record for failure to comply with L.R. 56.1.

### III. Plaintiff's Response is Supported by Inadmissible Evidence that Must be Disregarded.

UPS is entitled to Summary Judgment because Plaintiff failed to present any admissible evidence to support his claims. First, Plaintiff's declaration is inadmissible under 28 U.S.C. §1746 because it is not dated. 28 USC §1746; LR. 56.1. As such, the declaration should be excluded. *H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co.*, 2017 U.S. Dist. LEXIS 207613, at *3 (N.D. Ill. Dec. 18, 2017) (excluding undated declaration from evidence in support of motion for summary judgment); *Kalra v. United States*, 2013 U.S. Dist. LEXIS 57755, at *8, 111 (N.D. Ill. Apr. 23, 2013).

Second, even if Plaintiff's declaration was considered admissible, many of the allegations within the declaration are inadmissible. A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. Fed. R. Civ. P. 56(e)(1). Statements that are speculative, conclusory allegations, inadmissible hearsay, legal conclusions, or are not based on personal knowledge must be stricken. *See Pfeil v. Rogers*, 757 F.2d 850, 861-63 (7th Cir. 1985).[8]

---

[7] SOF ¶4, 10, 26, 38-42, 44, 47, 49-50, 52-53, 61-63, 67-68, 76-79, 85, 88, 91, 99.
[8] *See also Drake v. Minn. Mining & Mfg. Co.,* 134 F.3d 878 (7th Cir. 1998) (affirming decision to strike portions of an affidavit that did not establish personal knowledge of the facts and were no more than

Additionally, declarations are considered shams and are inadmissible if they contradict the declarant's own deposition testimony. *See e.g. Miller v. A.H. Robins Co., Inc.,* 766 F.2d 1102, 1104 (7th Cir. 1985). Here, the allegations in Plaintiff's declaration should be stricken to the extent that they include inadmissible hearsay; fail to provide a foundation to show that he has personal knowledge of the assertions; or are conclusory, speculative, state inappropriate legal conclusions, or contain legal argument. Likewise, Plaintiff's interrogatory answers are also inadmissible for the same reasons. *See. e.g. Luster v. Illinois Dep't of Corr.*, 652 F.3d 726, 731 n.2 (7th Cir. 2011); *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1166 (7th Cir. 1996). For example, the following statements should be stricken as inadmissible:

- <u>Lack of Specificity and Foundation</u>: Pl.'s Decl. ¶4; *Id.* at ¶ 4 s. 1-2, 4; *Id.* at ¶8 s. 4-5; *Id.* at ¶9 s. 3, 5; Pl.'s Irogs, p. 112-114.
- <u>Inadmissible Hearsay or Lack of Personal Knowledge</u>**:** Pl.'s Decl. ¶4 s. 1-2; *Id.* at ¶7 s. 1-2; *Id.* at ¶8 s. 4-5; Pl.'s Irogs, p. 112-114.
- <u>Conclusory or Legal Argument</u>**:** Pl.'s Decl. ¶2 s. 3; *Id.* at ¶4 s. 1-4; *Id.* at ¶6 s. 3; *Id.* at ¶8 s. 2-3; Pl.'s Irogs, p. 112-114.
- <u>Speculative</u>**:** Pl.'s Decl. ¶4 s. 3; *Id.* at ¶8 s. 4-5; *Id.* at ¶9 s. 1; Pl.'s Irogs, p. 112-114.
- <u>Contradicted Deposition Testimony</u>**:** *Compare* ¶5 s. 3, *with* Pl. Dep. 205:9-22, Rein Dep. 85:3-24, Opperman Dep. 98:2-24, Sanchez Decl. ¶16, Communications, p. ME-001903-001905; Pl.'s Decl. ¶ 9 s. 4-5, *with* Pl. Dep. 104:2-5, Pl.'s Dep. 225:8-226:11.

As Plaintiff's declaration and interrogatories are inadmissible evidence to support his claims, they should be disregarded and the Court should grant UPS's Motion for Summary Judgment.

### IV. Plaintiff's §301 Claim Fails as a Matter of Law and Should be Dismissed.

#### a. Plaintiff's §301 Claim Fails Because Plaintiff is not Entitled to Sixth Day Pay under the Contract.

Plaintiff's §301 claim fails as a matter of law because the CBA unambiguously states that Plaintiff is not entitled to sixth day pay. Moreover, Plaintiff's argument requires the Court to ignore

---

conclusory allegations); *Marshall v. Local 701,* 2008 U.S. Dist. LEXIS 75794, at *11-12 (N.D. Ill. Sep. 19, 2008).

4

the basic tenets of contract interpretation by intentionally disregarding the clear language of the contract and unnecessarily rendering terms superfluous. To succeed on a §301 claim, the Plaintiff must prove that UPS breached the collective bargaining agreement. *Rupcich v. United Food & Commercial Workers Int'l Union*, 833 F.3d 847, 853 (7th Cir. 2016). When interpreting CBAs, courts apply the general rules of contract interpretation. *IBEW, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 405 (7th Cir. 2002). Under the well-established principles of contract law, if the CBA is clear and unambiguous, then the court should not resort to extrinsic evidence. *Alexander v. City of Evansville*, 120 F.3d 723, 727 (7th Cir. 1997). Only if the CBA is unclear, may information about the CBA's formation and course of dealing be considered. *Id.*

Courts should interpret contracts in a way that prevents rendering provisions superfluous. *Pronschinske Tr. Dated March 21, 1995 v. Kaw Valley Cos.*, 899 F.3d 470, 474 (7th Cir. 2018); *Leszanczuk v. Carrington Mortg. Servs., LLC*, 2021 U.S. Dist. LEXIS 20561, at *13 (N.D. Ill. Feb. 3, 2021) (Court must "give meaning to every provision of the contract and avoid a construction that would render a provision superfluous.") (internal quotations omitted).[9] Additionally, "[i]t is a well-settled principle of contract construction that where a contract contains both general and specific provisions relating to the same subject, the specific provision controls." *Carr v. Gates Health Care Plan*, 195 F. 3d 292, 298 (7th Cir. 1999).

In this case, the CBA explicitly states in Article 40.1(d) and (k) that part time air drivers, such as Plaintiff, who work on Saturday or Sunday, shall be paid at the air drivers' straight time rate of pay unless the air driver has worked over eight (8) hours in a day or forty (40) hours per week. To the contrary, Plaintiff asks the Court to ignore the directly-on-point language in Article

---

[9] *See Marcic v. Reinauer Transp. Companies*, 397 F.3d 120, 131-32 (2d Cir. 2005) ("[W]e must [] seek to avoid rendering any of the CBA language superfluous."); *Bender v. Newell Window Furnishings, Inc.*, 681 F.3d 253, 261 (6th Cir. 2012)*; Cooper Union Fed'n. of Coll. Teachers, Local 2163 v. Cooper Union for the Advancement of Sci. & Art*, 2019 U.S. Dist. LEXIS 2560, at *10 (S.D.N.Y. Jan. 7, 2019).

40.1 and, instead, find that Article 46 entitles Plaintiff to sixth day pay despite the fact that Article 46 indicates that its provisions apply to full time employees, and Plaintiff is not a full time employee. Pl.'s Resp., p. 2; SOF ¶12. Because Article 46 does not apply to Plaintiff as a part-time air driver, there is no conflict between the two provisions or ambiguity. Based on the clear, unequivocal language in the CBA, no reasonable finder of fact could determine that Plaintiff is automatically entitled to a sixth day premium pay.

Furthermore, to find that Article 46 applies to Plaintiff, the Court would have to impermissibly render the relevant language in Article 46, which describes the full-time employee schedule, and all of Article 40.1(d) and (k) superfluous. *Pronschinske*, 899 F.3d at 474. Regardless, even if there was a conflict between the terms, under the principles of contract law, the more specific terms of Article 40.1(d) and (k) would still control. *Horne v. Elec. Eel Mfg. Co.*, 987 F.3d 704, 731 (7th Cir. 2021) ("[W]here both a general and a specific provision in a contract address the same subject, the more specific clause controls") (internal citation omitted); *Boatmen's Nat'l Bank v. Smith*, 835 F.2d 1200, 1203 (7th Cir. 1987) ("Where the document contains both general and specific provisions relating to the same subject, the specific provision controls.")

As the CBA is clear and unambiguous that Plaintiff is not entitled to sixth day pay, extrinsic evidence cannot be considered, including Plaintiff's conclusory allegations of past practice or alleged verbal representations. *Alexander*, 120 F.3d at 727. Notably, to the extent extrinsic evidence could be considered, the extrinsic evidence supports the Union's and UPS's determination that part-time air drivers are not entitled to sixth day pay.[10]

---

[10] The UPS and Union employees who served on the negotiation committee for the CBA, and are responsible for the CBA's drafting and interpretation, all agree that the drafters did not intend to provide air drivers sixth day pay, which was the purpose for Articles 40.1(d) and (k). SOF ¶¶13-16, 47-51. Additionally, the union and UPS agree that there is no past practice of paying air drivers for sixth day pay. SOF ¶53.

6

Despite the clear language of the CBA, Plaintiff attempts to assert a detrimental reliance argument claiming that the Union and UPS somehow misled him about his eligibility for sixth day pay. Pl.'s Resp., p. 2. However, a successful §301 claim requires Plaintiff to prove a breach of contract, not detrimental reliance; a detrimental reliance claim is only available in the absence of an enforceable contract, and the CBA is an enforceable contract. *Holy Cross Hosp. v. Bankers Life & Cas. Co.*, No. 01 C 1505, 2002 U.S. Dist. LEXIS 21804, at *28 (N.D. Ill. Nov. 8, 2002). Moreover, Plaintiff has not provided evidence that UPS or the Union made him a promise that he reasonably relied on to his detriment because he admits that: (a) UPS management and Union management repeatedly told Plaintiff that he was not entitled to sixth day pay; (b) Union management reviewed the CBA with Plaintiff and explained why he was not entitled to sixth day pay; and (c) UPS has been denying Plaintiff's requests for sixth day pay since April of 2018. SOF ¶¶ 44, 47-51, 54 66. Plaintiff's argument that he detrimentally relied on a Union steward's assertion that he may be eligible for sixth day pay is undermined by his admission that the Union leadership responsible for interpretation and enforcement of the CBA had already explained to him that he was not entitled to sixth day pay and he understood that to be the Union's position.[11] Also, Plaintiff provides no evidence that UPS's payroll system automatically awarded him sixth day pay.[12] In fact, this assertion is undermined by the fact that he had to file for adjustments to attempt to obtain the sixth day pay. SOF ¶¶44, 54. Likewise, the fact that Plaintiff was able to exploit the payroll system by repeatedly requesting payroll adjustments to which he was not entitled until he found

---

[11] Plaintiff testified that, at some point, his union steward told him that he was entitled to sixth day pay. But, Plaintiff admits that during that same time period, Scott Rein, who Plaintiff knew had higher authority than the stewards, told him that he was not entitled to sixth day pay and that the union stewards were incorrect. Pl.'s Dep. 414:3-416:2.

[12] To the extent that Plaintiff was automatically paid premium pay on Saturdays, part-time air drivers were entitled to premium pay for overtime hours worked over 40 per week or 8 hours per day. SOF ¶9. It was not because he was entitled to sixth day pay.

7

one manager who wrongly approved them "on a few occasions" does not establish that UPS interpreted the contract to entitle him to sixth day pay. *Id.*; Pl.'s Decl. ¶3. To the contrary, as soon as the Labor Department and senior management became aware that Plaintiff had been incorrectly receiving payroll adjustments, it quickly and unequivocally explained to Plaintiff that he was not entitled to sixth day pay as a part-time air driver. SOF ¶54. This is especially true given that UPS intended to seek reimbursement for the overpaid amounts, and UPS only agreed not to do so at the Union's request. *Id.* In sum, both the clear language of the contract and the extrinsic evidence supports that the part-time air drivers were not entitled to sixth day pay.

      **b. Plaintiff's Sixth Day Pay Grievances that were Withdrawn by the Union for Failure to File within 30 Days are Time-Barred.**

Plaintiff misstates UPS' argument that Plaintiff's claims are partially time-barred. UPS does not argue that the entire claim is time-barred; UPS only articulates that Plaintiff's claim regarding the sixth day pay grievances that the Union withdrew as untimely are time-barred because he failed to file suit within six-months of the date that he learned the Union was not going to pursue his grievances. *See* Def. MSJ p. 5. To the extent that Plaintiff argues that his claim is not time-barred because he still has some pending grievances, any pending grievances are not within the scope of this lawsuit and cannot form the basis for his §301 claim. *See* Def.'s Mot., FN 1. Moreover, Plaintiff already admitted that he was paid overtime for all hours worked over 40. SOF ¶45.

      **c. Plaintiff's §301 Claim Fails as a Matter of Law Because He has not Established that the Union Breached its Duty of Fair Representation in Resolving His Seniority Grievances.**

Plaintiff provides no evidence that the Union breached its duty of fair representation with regard to his seniority grievances. A union does not breach its duty of fair representation merely because it settles a grievance short of arbitration or failing to consult with a worker prior to settling

8

a grievance. [13] *Sipes*, 386 U.S. at 192; *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 631 (6th Cir. 2009). Plaintiff admits that the Union settled his grievances for a monetary sum, that he accepted the settlement amount, and he understood that by accepting the settlement that the grievance process would end. Pl.'s Dep. 225:5-226:11.

Plaintiff now attempts to claim that the settlement was unsatisfactory because he did not receive penalty payments, but he introduces no evidence to support that he was entitled to penalty payments under the CBA, and he admits that he never filed a supplemental grievance seeking the penalty payments. Pl.'s Resp., p. 3; Pl.'s Dep. 225:5-226:11. Moreover, Plaintiff admitted in his deposition that he was satisfied with the Union's representation in obtaining those settlement amounts, and that the settlement was satisfactory even without the penalty pay. Pl.'s Dep. 38:5-9, 63:4-76:8, 88:5-92:13, 96:2-19, 116:3-11, 225:2-226:11, 231:8-233:3, 381:9-12.

> Q: [B]ut when the grievance was filed, you withdrew it for a monetary settlement, and even if you didn't include penalty pay in it, presumably, because you accepted, that was fine with you, right? It was satisfactory enough that you took the money, right?
> A: Yes.

Pl.'s Dep. 226:4-11. Thus, Plaintiff has presented no evidence to show that the Union breached their duty of fair representation.

### d. Plaintiff's §301 Claim Fails as a Matter of Law Because he Failed to Establish that he was Retaliated Against in Breach of Contract or That the Union Breached their Duty of Fair Representation.

Plaintiff has also failed to present any evidence that UPS retaliated against him, or that the Union breached their duty of fair representation. First, as explained below, Plaintiff does not introduce any admissible evidence to support that he suffered an adverse action or was retaliated

---

[13] "A union does not act unfairly when if fails to consult with or advise a grievant of its bargaining activities, . . . nor in the legitimate exercise of its discretion, need it obtain the employee's consent before settling a grievance." *Caputo v. Nat'l Ass'n of Letter Carriers*, 730 F. Supp. 1221, 1230 (E.D.N.Y. 1990) (citing *Marietta v. Cities Service Oil Co.*, 414 F. Supp. 1029, 1036 (D.N.J. 1976)); *Sanderson v. Ford Motor Co.*, 483 F.2d 102, 114 (5th Cir. 1973)).

9

against by UPS or the Union. Thus, he failed to establish a breach of contract. Second, Plaintiff fails to explain why the Union's decision to withdraw his retaliation grievances for lack of evidence breached their duty of fair representation. Plaintiff vaguely states that he told the Union about conversations he had with UPS and Union employees that he felt were retaliatory, and makes the conclusory allegations that UPS and the Union refused to investigate his claims. Pl.'s Resp., p. 3. Yet, he does not articulate what those conversations were or why he felt they were retaliatory, or how the Union failed to investigate his claims. Thus, he still fails to articulate any evidence to justify the Union pursuing his claims, which they determined to be meritless. SOF ¶62.

**V.  Plaintiff Fails to Provide any Evidence to Support a Viable Claim of Racial Harassment.**

Plaintiff's brief fails to present any admissible evidence that he was harassed based on his race and merely regurgitates the unsupported, conclusory allegations in his interrogatories. Pl.'s Br. 3-4. At best, Plaintiff alleges: (1) UPS Labor Manager Chris Opperman allegedly "harassed" him by cutting him off during grievance meetings and by denying some of Plaintiff's grievances that UPS considered meritless; and (2) on one occasion Black manager Torian Farrar gave him a damaged cart to use.[14] However, denying meritless grievances and cutting off an employee is not harassment; courts recognize that there is normally a contentious relationship between employees and management during grievance meetings. *See Patton v. Indianapolis Public School Bd.,* 276 F.3d 334 (7th Cir. 2002). Likewise, Plaintiff provides no evidence that Farrar knew the cart was damaged or was attempting to punish Plaintiff. Critically, Plaintiff admits that these insignificant incidents happened only a handful of times over a three year period and, thus, do not even approach the threshold for severe or pervasive. *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430-31 (7th Cir.

---

[14] Plaintiff admits that Opperman agreed to settle other seniority grievances when the union demonstrated that they had merit because a less senior employee worked. SOF ¶58.

1995) (holding that nine incidents over seven months did not amount to a hostile work environment); *Luckie v. Ameritech Corp.*, 389 F.3d 708, 714 (7th Cir. 2004) (finding no hostile work environment when the conduct consisted of isolated events that were not physically threatening or humiliating).

Plaintiff also provides no competent or admissible evidence that UPS was harassing him on the basis of race, making only the unsupported claim that UPS's conduct must be "racist because there is no other explanation for it." Pl.'s Br., p. 4. Conclusory statements, subjective beliefs, and unsupported speculations about motives are insufficient to establish evidence of race discrimination. *Samuels v. Schneider Nat'l Carriers*, No. 15 C 8468, 2018 U.S. Dist. LEXIS 163926, at *16 (N.D. Ill. Sep. 24, 2018) (denying race discrimination claim when no evidence of racial animus was presented and dismissing Plaintiff's speculation that there was no other explanation for his perceived mistreatment); *Visser v. Packer Eng'g Assocs., Inc.,* 924 F.2d 655 (7th Cir. 1991) ("Discrimination law would be unmanageable if . . . the plaintiff-could defeat summary judgment by affidavits speculating about the defendant's motives."). As Plaintiff has provided no evidence that he was being harassed on the basis of his race, his harassment claim fails as a matter of law.

**VI.** **Plaintiff's Discrimination and Retaliation Claims Fail as a Matter of Law Because he has not Presented any Evidence of an Adverse Action or Discriminatory or Retaliatory Intent.**

As explained below, Plaintiff still fails to produce any evidence that he was subjected to any adverse action in retaliation for filing complaints or due to his race.

**a. UPS did not Discriminate Against Plaintiff by Denying his Request for Sixth Day Pay to which he was not Entitled.**

To begin, Plaintiff presents no evidence that other employees were provided sixth day pay, again relying on conclusory assertions, without citing any admissible evidentiary support, that UPS automatically paid Plaintiff sixth day pay. To the contrary, UPS has provided a sworn statement

11

from a manager, who reviewed the other part-time air driver's wage records, that affirmed that they did not receive sixth day pay. SOF ¶¶76-77. Plaintiff also admits that he had to request his managers to provide him sixth day pay, which supports that UPS was not automatically granting sixth day pay. SOF ¶¶43-44. Further, Plaintiff admits that other part-time air drivers told him that they did not receive sixth day pay. SOF ¶67. Notably, three of the six air drivers that Plaintiff claims received the sixth day pay are Black, undermining any claim that he was denied the pay based on his race. SOF ¶¶74-75. Similarly, UPS's decision to decline to pay him sixth day pay to which he was not entitled is not retaliatory, especially considering that these denials began in April of 2018, over seven months before Plaintiff filed his first government complaint and four months before filing his first grievance. SOF ¶¶38, 66, 93. Thus, there is no evidence of retaliatory action.

### b. Plaintiff has not Provided Evidence that UPS Discriminated or Retaliated against Him by Allegedly Reducing his Work Hours.

Plaintiff's claim that his hours were reduced fails as a matter of law. Plaintiff has introduced no evidence that his hours were reduced, when they were reduced, or by how much they were reduced. To the contrary, Plaintiff's payroll records clearly show (and Plaintiff admits) that he worked substantially over his 15-hour weekly guarantee almost every week. SOF ¶17; Pl.'s Dep. 120:21-121:5. It is also undisputed that, under the CBA, air drivers were not supposed to perform ground work, and UPS had to pay a penalty when they did. Plaintiff admits that as early as March 2018 and continuing to this day, UPS has attempted to prohibit <u>all</u> air drivers from performing ground work, not just Plaintiff, and that Plaintiff's non-Black colleagues complained to him that no air drivers were permitted to perform ground work. SOF ¶¶64-65.

Plaintiff also admits that availability of extra ground work fluctuates throughout the year based on demand, volume, and current staffing levels, and that he has no idea how many extra hours were available at his center or how many hours went to the <u>hundreds</u> of employees who had

a higher right to first refusal. SOF ¶¶20-21, 35, 68. To the contrary, UPS submitted significant evidence that there were less ground hours available for the part-time air drivers to pick-up because: (1) UPS hired over 100 new 22.4 full-time combination drivers to assist with ground delivery who had first right of refusal to those hours; (2) UPS began shifting a large number of full time drivers to Tuesday to Saturday schedules limiting extra hours available; and (3) full-time ground drivers filed grievances complaining that part-time air drivers were permitted to work ground indicating they wanted those hours. SOF ¶¶28, 36-37.

Plaintiff makes the conclusory assertion that there were hours available to him because Tracy Carr and Zilvinas Ramasauskas[15] worked more hours than he did during the time period, but he provides no evidence that they worked more hours or foundation for how he allegedly knew their work schedules.[16] Pl.'s Resp. p. 3-6. To the contrary, he admitted during his deposition that he had never seen their payroll records. Pl. Dep. 141:18-154:3. Regardless, even if Carr[17] and Ramasukus worked more hours, Plaintiff has not demonstrated that he would have been entitled to those hours or that he didn't refuse the hours. In fact, the evidence on the record establishes that Plaintiff refused to work on numerous occasions, including refusing to work for Farrar on multiple occasions and turning down work due to vacation or because he did not feel like it. SOF ¶¶30, 69, 70.

Critically, Carr is Black, which undermines any claim that the alleged reduction in hours was race-related. Likewise, Plaintiff admits that UPS prevented all part-time air drivers from

---

[15] To the extent that Ramasauskas was permitted to work hours to which Plaintiff was entitled, Plaintiff admits that he filed a grievance and the union obtained financial settlements in his favor every time a seniority violation could be proven. SOF ¶58.

[16] Plaintiff's brief references Susan Infante, but he cites to absolutely no evidence to support that Susan Infante received more hours during the relevant time period. Pl.'s Br. p. 5. Plaintiff also admits that Infante is an AM air driver who had higher claim to extra hours in her center. SOF ¶74.

[17] Carr was an a.m. air driver entitling him to a higher priority for extra hours available in his center. SOF ¶74.

13

working extra ground hours, not just himself, which undermines his claims of discrimination and retaliation. Furthermore, Plaintiff admits that UPS began to prevent air drivers from performing ground work as early as March of 2018, nearly 8 months prior to his first administrative charge and 5 months prior to filing his first grievance, directly contradicting his claim of retaliation.

### c. Plaintiff's IWA Claim Fails as a Matter of Law Because he Failed to Establish Retaliatory Intent or Knowledge.

Plaintiff's retaliation claim fails as a matter of law because he has provided no evidence that the alleged retaliators knew about his government complaints or had a retaliatory motive.[18] "A decision maker cannot retaliate on account of the protected activity if he is unaware of the protected activity." *Sebastian v. City of Chi.*, No. 05 C 2077, 2008 U.S. Dist. LEXIS 60570, at *112 (N.D. Ill. July 24, 2008). Contrary to Plaintiff's assertion, there is no "reasonable inference" that decision-makers were aware because Plaintiff's complaints were served on UPS and he discussed his complaint with one UPS employee.[19] In fact, the Seventh Circuit has repeatedly stated that the decision-maker must have had "actual knowledge" of the complaint. *See e.g. Hayes v. Potter,* 310 F.3d 979, 982-83 (7th Cir. 2002) ("in a retaliation case, it is not enough that the decisionmaker should have known about a discrimination complaint; the decisionmaker must have had actual knowledge of the complaint for her decision to be retaliator"); *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004). Thus, Plaintiff has failed to meet his burden to show that the alleged adverse action was retaliatory in motive.

---

[18] Plaintiff alleges that he filed internal complaints prior to March of 2018. Pl.'s Resp. p. 7. However, he cites to no evidence to support this allegation. *Id.* Regardless, the Illinois Whistleblower Act only protects individuals who file complaints to government entities, not internal reporting. *Mimedx Grp., Inc. v. Fox*, 2018 U.S. Dist. LEXIS 11272, at *29 (N.D. Ill. Jan. 24, 2018); *Zelman v. Hinsdale Twp. High School Dist. 86*, 2010 U.S. Dist. LEXIS 120147, 2010 WL 4684039, at *2 (N.D. Ill. Nov. 12, 2010).

[19] Plaintiff's declaration only identifies that he discussed his complaint with Luis Cardenas, who is not alleged to have retaliated against him. Pl.'s Decl. ¶9.

## VII. Plaintiff Provides no Justification for Why he is Entitled to Punitive Damages.[20]

Plaintiff provides no evidence that UPS's conduct was motivated by evil motive or intent, or that it involves reckless or callous indifference to the federally protected rights of others. *Yarbrough v. Tower Oldsmobile, Inc.*, 789 F.2d 508, 514 (7th Cir. 1986). While Plaintiff makes the conclusory allegation that "UPS does not follow its own rules or policies," he fails to present any evidence to support this allegation. Pl.'s Resp. p. 7. Additionally, he alleges that UPS's investigation was deficient because it was not conducted by a third-party investigator, but he fails to cite to any standard requiring investigations to be completed by a third-party investigator. *Id.* Similarly, Plaintiff claims that UPS had reason to suspect that Plaintiff was being subjected to unlawful treatment, but Plaintiff admits that he never complained about racial discrimination or harassment, and only stated that he was complaining about pay.[21] *Id.*; SOF ¶¶82, 86; Pl. Dep. 157:17-158:2. Thus, even if Plaintiff had a valid claim, there is no justification for issuing punitive damages against UPS.

## III. **CONCLUSION**

For the reasons stated above, Plaintiff's claims fail as a matter of law and summary judgment should be granted.

                                                                Respectfully submitted,
                                                                /s/ Allison L. Goico
                                                                Allison L. Goico
                                                                Charles M. Roesch
                                                                Hayley L. Geiler
                                                                Dinsmore & Shohl LLP
                                                                255 E. Fifth Street, Suite 1900
                                                                Cincinnati, OH 45202

---

[20] Without any citation, Plaintiff argues that claims for punitive damages must be resolved on a motion to strike. However, a motion for summary judgment is an appropriate mechanism for moving to dismiss a claim for punitive damages. *Blanchard v. Andrews*, No. 08 C 5037, 2010 U.S. Dist. LEXIS 109330, at *8 (N.D. Ill. Oct. 12, 2010)

[21] Notably, Plaintiff filed complaints with numerous agencies, but not one of them mentioned race discrimination. SOF ¶93-98.

P: (513) 977-8178<br>
Allison.goico@dinsmore.com<br>
Chuck.roesch@dinsmore.com<br>
Hayley.geiler@dinsmore.com<br>
*Counsel for Defendant UPS*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 20th of December, 2021, the foregoing was electronically filed via the Court's eFile system, which shall send notification to the following listed below.

| | |
|---|---|
| Eric Onyango<br>Prime Legal, LLC<br>222 North Columbus Drive #1507<br>Chicago, Illinois 60601<br>*Counsel for Plaintiff* | Khristian Gervais Parker<br>Teamsters Local Union No. 705<br>1645 W. Jackson Blvd., 7th Floor<br>Chicago, Illinois 60612<br><br>N. Elizabeth Reynolds<br>Allison, Slutsky and Kennedy, P.C.<br>230 W. Monroe Street, Suite 2600<br>Chicago, IL 60606<br>*Counsel for Defendant Teamsters Local Union*<br>*No. 705* |

/s/ Allison L. Goico

23724766.3